IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICKI KELLEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-0626 |
| | § | |
| ANDREW PAPANOS *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

**I.     Background**

Ricki Kelley sued the Texas Department of Public Safety ("DPS") and one of its employees, Andrew Papanos, in state court to recover for injuries he sustained during his arrest. Kelley alleged that he led police on a "multi-county pursuit," then "capitulated" in Fort Bend County, Texas. Kelley alleged that despite the fact that he was no longer fleeing and was offering no resistance, Papanos hit him with a baton "and/or other instruments of control," injuring him so severely that a Life Flight helicopter "had to be dispatched to rush him to the hospital in time to save his life." (Compl. ¶ 8.) Kelley asserted a Fourth and Fourteenth Amendment excessive-force claim against Papanos under 42 U.S.C. § 1983, and a state-law claim against the DPS under Tex. Civ. Prac. & Rem. Code § 101.021(2). The claim against the DPS was predicated on Papanos's negligence. Kelley alleged that the DPS was vicariously liable for Papanos's conduct because Papanos "acted negligently in his use of his instruments of restraint." (Compl. ¶ 16.) Kelley did not plead a state-law negligence claim against Papanos in addition to the federal constitutional claim, and he did not assert a § 1983 claim against the DPS.

After the defendants removed the case to federal court, the DPS filed a motion to dismiss on the basis of Eleventh Amendment and state sovereign immunity under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The motion argued that the Eleventh Amendment barred Kelley's claim because the DPS, a Texas state agency, did not consent to suit in federal court. The DPS also argued that the doctrine of state sovereign immunity barred Kelley's claim. Despite the conclusory allegation that Papanos negligently used the baton and other instruments of restraint when arresting Kelley, the DPS argued that the "Facts" section of the petition pleaded only an intentional tort for which the Texas Tort Claims Act ("TTCA"), Tex. Civ. P. & Rem. Code § 101.001 *et seq.*, did not waive the DPS's state sovereign immunity.[1] (Docket Entry No. 9.) Kelley responded that the DPS waived its Eleventh Amendment immunity by joining Papanos's notice of removal and that the TTCA waived state sovereign immunity for his negligence-based claim. (Docket Entry No. 12.) The DPS replied, (Docket Entry No. 14), and Kelley surreplied, (Docket Entry No. 15).

Based on the pleadings; the motion, response, and replies; and the relevant law, this court grants the motion to dismiss on the basis of state sovereign immunity and denies the motion to dismiss on the basis of Eleventh Amendment immunity. By **February 23, 2012,** Kelley may amend his complaint to attempt to state a claim against the DPS that falls within the TTCA's limited waiver of sovereign immunity. The reasons for these rulings are explained below.

---

[1] Although the DPS's counsel does not represent Papanos in this action, the motion to dismiss also argued that Tex. Civ. Prac. & Rem. Code § 101.106 compels dismissal of the 42 U.S.C. § 1983 claim against Papanos. Stating that it would be more appropriate for Papanos to raise this argument in his own motion, DPS withdrew the argument in its reply brief. Even if Papanos raised it, the argument would not succeed. State law cannot displace Kelley's federal cause of action. *See Little Co. of Mary Hosp. & Health Care Ctrs. v. Shalala*, 165 F.3d 1162, 1164 (7th Cir. 1999) ("But of course state law cannot preempt federal law."); *Bradshaw v. Twp. of Middletown*, 296 F. Supp. 2d 526, 550 (D.N.J. 2003) ("Defendants curiously suggest that plaintiffs' § 1983 claims, brought under federal law, are preempted by New Jersey state law. . . . We dispose of this far-fetched argument quickly. State law cannot preempt federal law; if the two conflict, it is the state law, not the federal, that is preempted.").

## II. The Legal Standards

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996)). "[T]he standard of Rule 12(b)(1) . . . while similar to the standard of Rule 12(b)(6), permits the court to consider a broader range of materials in resolving the motion." *Williams v. Wynne*, 533 F.3d 360, 365 n.2 (5th Cir. 2008). A court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986). As a general rule, the plaintiff bears the burden of demonstrating that subject-matter jurisdiction exists. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). But when a party raises the Eleventh Amendment as a bar to jurisdiction, the party asserting that immunity bears the burden of establishing it. *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002).

### B. Rule 12(b)(6)

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b) (6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads

3

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The federal pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks and citation omitted).

### III. Discussion

#### A. The Motion to Dismiss on the Basis of Eleventh Amendment Immunity

The Eleventh Amendment bars suits by private citizens against a state in federal court unless the state has specifically waived its immunity or Congress has abrogated it. *Kastner v. Lawrence*, 390 F. App'x 311, 315 (5th Cir. 2010). Relying on *Lapides v. Board of Regents of the University System of Georgia*, 535 U.S. 613 (2002), Kelley argues that the DPS waived its Eleventh Amendment immunity when it joined Papanos in removing the case to federal court. The DPS responds that *Lapides* does not apply because it joined Papanos's notice of removal, but "did not itself remove the case" and "had no intention of doing so and would not have removed the case on its own." (Docket Entry No. 14, at 2.)

The DPS reads *Lapides* too narrowly. In *Lapides*, the Supreme Court held that a State waives its Eleventh Amendment immunity when it removes a case to federal court. *Id.* at 624. "'[W]here a State *voluntarily* becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment.'" *Id.* at 619 (quoting *Gunter v. Atl. Coast Line R.R. Co.*, 200 U.S. 273, 284 (1906)). As the Court explained, "[i]t would seem anomalous or

inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the 'Judicial power of the United States' extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the 'Judicial power of the United States' extends to the case at hand. And a Constitution that permitted States to follow their litigation interests by freely asserting both claims in the same case could generate seriously unfair results." *Id.* Under the "voluntary invocation" principle, there is no meaningful distinction between a defendant who initiates removal and one who consents to removal initiated by another. Both voluntarily invoke the federal court's jurisdiction. *Lapides* does not support the DPS's argument.[2] *See Wilson v. CSX Transp.*, No. 6:10-cv-852-Orl-31GJK, 2010 WL 2541837, at *1 (M.D. Fla. June 23, 2010) ("The fact that [the defendants] consented to removal rather than doing it themselves does not alter the voluntary nature of their appearance here, or the resulting waiver of Eleventh Amendment immunity.").

Recognizing that *Lapides* applies to defendants who consent to rather than initiate removal does not end the Eleventh Amendment immunity inquiry. In *Lapides*, the State of Georgia, "while conceding that a state statute had waived sovereign immunity from state-law suits in state court, argued that, by virtue of the Eleventh Amendment, it remained immune from suit in federal court." 535 U.S. at 616. The Supreme Court limited its holding "to the context of state-law claims, in

---

[2] Citing *Lapides*, the DPS also argues that this court should remand the state-law claim against it to state court under 28 U.S.C. § 1367(c)(3). By the time *Lapides* reached the Supreme Court, the federal claims had been dismissed and only state-law claims against the State remained. The Court explained that "in the absence of any viable federal claim, the Federal District Court might well remand Lapides'[s] state-law tort claims against the State to state court. Nonetheless, Lapides'[s] state-law tort claims against the State remain pending in Federal District Court, and the law commits the remand question, ordinarily a matter of discretion, to the Federal District Court for decision in the first instance." *Lapides*, 535 U.S. at 618 (internal citations omitted); *see also id.* at 624 ("We conclude that the State's action joining the removing of this case to federal court waived its Eleventh Amendment immunity—though, as we have said, the District Court may well find that this case, now raising only state-law issues, should nonetheless be remanded to the state courts for determination." (citing 28 U.S.C. § 1367(c)(3))). Unlike in *Lapides*, the federal claim against Papanos remains pending in this case. Section 1367(c)(3) does not support a remand to state court. *See* 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court *has dismissed all claims over which it has original jurisdiction*." (emphasis added)).

5

respect to which the State has explicitly waived immunity from state-court proceedings," *id.* at 617, and did not "address the scope of waiver by removal in a situation where the State's underlying sovereign immunity from suit has not been waived or abrogated in state court," *id.* at 617–18. Unlike in *Lapides*, the DPS did not concede that Kelley could sue it in state court. The DPS argues that the TTCA does not waive its sovereign immunity for such a suit. "Some courts have concluded that removal does not waive a state's sovereign immunity to a claim unless the state previously had waived its immunity to such a claim in state court proceedings." *Bergemann v. Rhode Island Dep't of Envtl. Mgmt.*, --- F.3d ----, 2011 WL 6350539, at *5 (1st Cir. Dec. 20, 2011) (citing cases).

Although *Lapides* is limited by its facts to state-law claims over which the State has already waived immunity in state court, the Fifth Circuit has recognized that its reasoning applies more broadly. "*Lapides*'s interpretation of the voluntary invocation principle, as including the waiver-by-removal rule, applies generally to any private suit which a state removes to federal court." *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 242 (5th Cir. 2005), *reh'g and reh'g en banc denied*, 454 F.3d 503 (5th Cir. 2006). The court saw "no evident basis in law or judicial administration for severely limiting those general principles . . . to a small sub-set of federal cases including only state-law claims in respect to which a state has waived immunity therefrom in state court." *Id.* But the court also held "that a sovereign enjoys two kinds of immunity that it may choose to waive or retain separately—immunity from suit and immunity from liability." *Id.* at 252–53. A state's voluntary removal of an action to federal court (or its consent to removal) waives its immunity from suit, but not its immunity from liability. *Id.* at 255. The DPS "may assert its state sovereign immunity as defined by [Texas] law *as a defense* against" Kelley's claim in federal court, "but it

6

may not use it to defeat federal jurisdiction or as a return ticket back to the state court system." *Meyers*, 454 F.3d at 504 (emphasis added).

Under *Meyers* and *Lapides*, the DPS waived its Eleventh Amendment immunity when it voluntarily joined Papanos in removing this case to federal court.[3] The motion to dismiss for lack of subject-matter jurisdiction on the basis of Eleventh Amendment immunity is denied.

### B. The Motion to Dismiss on the Basis of State Sovereign Immunity

DPS also argues that this court lacks subject-matter jurisdiction over Kelley's state-law claim because the claim does not fall within the TTCA's limited waiver of state sovereign immunity. According to the DPS, Kelley "pled the intentional tort of assault but couched it with language sounding in negligence to circumvent the [TTCA's] prohibition against bringing claims for intentional torts against state agencies." (Docket Entry No. 9, at 7.) Because the DPS waived its immunity from suit in federal court by consenting to removal, this court will analyze the DPS's argument as one to dismiss under Rule 12(b)(6) for failure to state a claim. *Cf. Meyers*, 454 F.3d at 504 ("[W]hen a State removes to federal court a private state court suit based on a federal-law claim, it invokes federal jurisdiction and thus waives its unqualified right to object peremptorily to the federal district court's jurisdiction on the ground of state sovereign immunity. However, that waiver does not affect or limit the State's ability to assert whatever rights, immunities or defenses

---

[3] The DPS argues that it has not waived its Eleventh Amendment immunity because the TTCA waives sovereign immunity only in state court. *See* Tex. Civ. Prac. & Rem. Code 101.102(a) ("A suit under this chapter shall be brought *in state court* in the county in which the cause of action or a part of the cause of action arises. (emphasis added)); *Sherwinski v. Peterson*, 98 F.3d 849, 852 & n.9 (5th Cir. 1996) (holding that Tex. Civ. Prac. & Rem. Code 101.102(a) "waives sovereign immunity in state court only"). As explained above, DPS's consent to removal, not the TTCA, waived DPS's Eleventh Amendment immunity in federal court.

are provided for by its own sovereign immunity law to defeat the claims against the State finally and on their merits in the federal courts.").

Under state sovereign immunity, "the State and its agencies are generally immune from suit unless the State gives its consent to be sued." *Tex. Dep't of Transp. v. Andrews*, 155 S.W.3d 351, 356 (Tex. App.—Fort Worth 2004, pet. denied). Section 101.021 of the TTCA waives the sovereign immunity of state agencies like DPS for claims of "personal injury and death . . . caused by . . . use of tangible personal . . . property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(2). "To state a claim under the [TTCA] based upon the use or misuse of nondefective tangible personal property, a plaintiff must allege (1) that the property was used or misused by a governmental employee acting within the scope of his or her employment and (2) that the use or misuse of the property was a contributing factor to the injury." *Gonzales v. City of El Paso*, 978 S.W.2d 619, 623 (Tex. App.—El Paso 1998, no pet.). "The negligence of the government employee must be the proximate cause of the injury and must involve a use or misuse of tangible personal property under circumstances where there would be private liability." *Sepulveda v. Cnty. of El Paso*, 170 S.W.3d 605, 615 (Tex. App.—El Paso 2005, no pet.). "[T]he waiver of governmental immunity provided by § 101.021 is limited by § 101.057. This limitation provides that claims 'arising out of assault, battery, false imprisonment, or any other intentional tort' are not actionable." *McCord v. Memorial Med. Ctr. Hosp.*, 750 S.W.2d 362, 363 (Tex. App.—Corpus Christi 1998, no writ) (quoting TEX. CIV. PRAC. & REM. CODE § 101.057(2)). "If a plaintiff pleads facts which amount to an intentional tort, no matter if the claim is framed as negligence, the claim generally is for an intentional tort and is barred by the TTCA." *Harris Cnty. v. Cabazos*, 177 S.W.3d 105, 111 (Tex. App.—Houston [1st Dist.]

2005, no pet.). "A plaintiff cannot circumvent the intentional tort exception by couching his claims in terms of negligence." *Id.*

In this case, Kelley has not alleged a viable claim under the TTCA. Kelley has alleged the elements of a § 101.021(2) claim based on the use of tangible personal property, but he has not alleged any facts supporting the inference that Papanos "acted negligently in his use of his instruments of restraint." (Compl. ¶ 16.) Kelley points to the "Facts" section of the petition to argue that he alleged a claim under the TTCA. In that section, Kelley alleged that, after he "capitulated," he "received severe personal injuries" from Papanos and that "[t]he means of inflicting injury . . . included the use of a baton and/or other instruments of control." (*Id.* ¶ 8.) These factual allegations support the inference that when Papanos beat Kelley with a baton, it was an intentional tort. *See City of Waco v. Williams*, 209 S.W.3d 216, 223–24 (Tex. App.—Waco 2006, pet. denied) ("Plainly, . . . the [plaintiffs] have alleged claims that 'arise out' of the officers' use of force—repeated Tasering—against the decedent, which allege the intentional tort of assault. There is, properly speaking, no such thing as a negligent assault." (internal quotations marks and citations omitted)). These allegations do not support the inference that Papanos acted negligently or that his negligence was the proximate cause of the injuries Kelley received.[4] As the Texas Court of Appeals has held, a plaintiff "must allege facts that, if true, would support a negligence claim apart from a claim for an intentional tort." *Tarrant Cnty. Hosp. Dist. v. Henry*, 52 S.W.3d 434, 441 (Tex. App—Fort Worth 2001, no pet.). Because Kelley has not done so in this case, his complaint fails to state a

---

[4] Nor do the allegations in the 42 U.S.C. § 1983 section of the complaint support this inference. In that section, Kelley alleged that when Papanos beat him with a baton, he was unarmed and neither resisting nor threatening resistance. (Compl. ¶¶ 11, 13, 15). Kelley pleaded that Papanos's actions show conscious indifference, (*id.* ¶¶ 12, 14), which is not negligence, *see Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

9

viable § 101.021(2) claim. This court grants the motion to dismiss the TTCA claim.[5] *See Iqbal*, 129 S. Ct. at 1949–50 (holding that "a formulaic recitation of the elements of a cause of action" or "facts [that] do not permit the court to infer more than the mere possibility of misconduct" fail to satisfy the pleading requirements of the federal rules).

## IV. Conclusion

The DPS's motion to dismiss the federal-law claim for lack of subject-matter jurisdiction under Rule 12(b)(1) is denied. The motion to dismiss the state-law claim for failure to state a claim under Rule 12(b)(6) is granted. No later than **February 23, 2012,** Kelley may amend his complaint to attempt to state a viable claim against the DPS under the TTCA.

SIGNED on January 24, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

---

[5] Kelley's argument that the TTCA does not preclude recovery for injuries resulting from the negligent use of tangible property when the same facts support a claim for an intentional tort does not compel a different result. Kelley has not pleaded "factual content that allows the court to draw the reasonable inference that [DPS] is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

10